THE STATE ex rel. JONES, *Appellant*, v. MARTIN.

1.  **Execution:** OFFICER'S LIABILITY FOR LEVYING: PLEADING. A sheriff is liable for an excessive sale, but not in an action wherein the petition charges only a wrongful levy, seizure and detention of the goods.

2.  **Fraudulent Conveyances.** Where father and son combined together to defraud the creditors of the father by a transfer of his goods to the son, and the father afterward added other goods bought on credit in the name of the son, to the stock. *Held*, that these goods were liable for the debts of the father, notwithstanding the son was liable for the price of them.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Shanklin, Low & McDougal* for appellant.

*Hicklin & Yates* with *Hollister* for respondent.

PHILIPS, C.—This is an action brought by James T. Jones against Martin, as sheriff of Daviess county, and the sureties on his bond, for damages, tried on change of venue in Livingston county. The breach of the bond assigned is, that one Hunter having obtained against Theophilus Jones a judgment for $1,916, Martin, as such sheriff, "without leave and wrongfully levied upon, seized, etc., as the property of said T. Jones," the goods and merchandise set out in the petition, of the value of $5,850, which were the "property of the relator, and has not returned the same or any part thereof." The answer took issue as to the value of the goods, and denied that they were "of any greater value than $2,500." The answer claimed that the goods were the property in fact of said Theophilus, who was the father of the relator, and that the relator's claim to said goods was fraudulent as to the creditors of said Theophilus, and especially as to said Hunter.

The evidence showed that the father of the relator owned in fact a hotel, which he traded, and took in exchange therefor a stock of goods estimated to be worth about $2,500. These goods were placed in the name of the relator, and the business was conducted in his name. But the father managed the entire concern, bought all the goods, and the evidence was such as to leave no doubt in any unprejudiced mind that the father was the real party in interest, that his object in employing his son's name was to defraud Hunter, and that his son was privy thereto. The stock of goods were, from time to time, replenished

by the father, but the goods were bought in the name of the son.

The sheriff, Martin, having testified on behalf of the defense, the following occurred :

On cross-examination plaintiff's counsel put to witness the following question : " Did you not levy upon and sell several hundred dollars' worth of goods over and above enough to satisfy the execution in your hands?" Which question was objected to by defendant's counsel as irrelevant, which objection was sustained by the court.

Plaintiff's counsel then asked the following question : "Did you not sell from $500 to $600 worth of goods after you had sold enough to satisfy the execution in your hands?". To this question the defendant's counsel objected as irrelevant, which objection was sustained by the court.

Witness then testified : . "I sold all the goods in the store, both boxed and unboxed. I sold some that were boxed up for about $130."

Plaintiff's counsel then asked the following question : "How much money did you receive for all the goods sold?" Which was objected to by defendant's counsel as irrelevant, which objection was sustained by the court.

Witness then testified : The queensware had not been taken out of the box. I sold that box, I think, for $130. I tendered back some of the goods after the sale to the plaintiff. He refused to receive them.

Plaintiff's counsel then asked the witness the following question : " Did you ever tender or offer to return any money that you had received on the goods sold over and above the satisfaction of the execution in your hands?" Which question was objected to by defendant's counsel as irrelevant, which objection was sustained by the court. Witness then further testified : " A small lot of the goods levied on were not sold. I offered them back. I offered to deliver them back to all three—Theophilus, James T. and George. They would not accept them."

Plaintiff prayed the court to instruct the jury as fol-
lows:

1. If the jury find from the evidence that defendant
Martin, as sheriff, levied upon and sold goods purchased
by James T. Jones, they must find for the plaintiff as to
such goods.

2. Unless the jury find from the evidence that The-
ophilus Jones, with intent to hinder, delay or defraud his
creditors or said Hunter, conveyed or caused the stock of
goods in controversy to be conveyed to James T. Jones,
the jury must find for the plaintiff the value of the stock
of goods seized and sold.

3. Theophilus Jones, even though insolvent, could
rightfully sell or dispose of his property in payment of his
debts; and he had a right to prefer his son as a creditor, if
he was a creditor. [Provided he did not thereby intend
to defraud, hinder or delay his creditors.]

4. The burden of proof is upon defendant to show
that all the property seized by the sheriff and here in con-
troversy was by Theophilus Jones transferred or caused to
be transferred to James T. Jones for the purpose of hin-
dering or delaying the creditors of Theophilus Jones, and
that James T. Jones intended thereby to hinder, delay or
defraud the creditors of Theophilus Jones.

5. If the jury find from the evidence that a portion of
the goods in controversy were purchased by James T. Jones
on his own credit, and that no property of Theophilus
Jones was used in payment therefor or in purchasing the
same, the jury must find for plaintiff as to such goods so
purchased.

6. If the jury find from the evidence that plaintiff's
mother and grandfather, or either of them, gave to
plaintiff any bonds, bills, notes or other valuable things as
his own, then said notes or property and the interest thereon,
so received by him, was and is his sole and individual prop-
erty, and he could claim the same at any time, although

he was not at the age of twenty-one years when said notes or other property were so given him.

8.   Although the jury may find from evidence that there was an attempt on part of Theophilus Jones to defraud his creditors, and that James T. Jones knew of it, still the jury are instructed that the property after acquired by James T. Jones, of other merchants, and for which he still owes, could not be affected by said fraud, and the jury will find for the plaintiff in such sum as they may find from the evidence James T. Jones had in said store, so purchased of other parties as aforesaid.

9.   If the jury find from the evidence that defendant levied upon and sold any more goods than the execution called for, he became a trespasser from the beginning, and the jury must find for the plaintiff the amount of goods sold, at their actual .cash value after said execution was satisfied.

10.   Although the jury may find that Theophilus Jones sold said hotel property to his son with intent to hinder and delay his creditors, still the jury will find for plaintiff the entire amount of the sale of said property so seized and sold by defendant, unless defendant has satisfied the jury by a preponderance of the testimony that plaintiff knew of said fraudulent design on the part of his father, and purchased said stock of goods for the purpose of enabling him to carry out said design.

Of which said instructions the court gave those numbered one, two, four, five, six, seven and ten, as asked, and modified the third by adding the clause which is included in brackets, thus [            ] and refused to give Nos. eight and nine.

The defendant's counsel then prayed the court to instruct, and the court did instruct the jury as follows:

1.   If the jury find that at the time of the transfer of the hotel property from Theophilus to James T. Jones, Theophilus was in failing circumstances and involved in debt, and was indebted to Samuel D. Hunter, and that such

transfer was made as the result of a fraudulent understanding between said Jones and Jones, with the intent to prevent the collection by Hunter of his debt against Theophilus Jones, then such transfer was fraudulent and void as to said Hunter, even though James T. Jones may have paid to his father the full and actual value of said hotel in cash.

2. If the jury find that the transfer of the hotel property from Theophilus to James T. Jones was void as to Hunter, then all property acquired by the trade or sale of such hotel thereafter will be held in law as the property of Theophilus Jones, and if the jury find that the stock of goods in question was obtained by a sale or trade of the hotel property, and find that the transfer from Theophilus to James T. Jones was void under the instruction just given, then such stock of goods and all goods added in the usual course of business by said Theophilus Jones, will be considered in law to be the goods of Theophilus Jones. '

The jury found the issues for the defendants, and plaintiff appealed.

The plaintiff seeks a reversal of the judgment on account of the action of the circuit court in refusing to permit him to show that the sheriff sold more goods than were necessary, and in refusing the eighth and ninth instructions asked by him.

1. EXECUTION: officer's liability for levying: pleading.

There is no question but that it was the plain duty of the sheriff, the instant he had sold goods sufficient to satisfy the execution and costs, to have ceased selling. He could pass no title against the owner to any property sold after the satisfaction of the writ. *Durette v. Briggs,* 47 Mo. 361, and cases cited. But it does not follow from this that the plaintiff was entitled in this action to recover the alleged excess. No such issue was presented in his petition. The breach assigned was, that the sheriff had "wrongfully levied upon and seized * * the property of the relator, and has not returned the same or any part thereof." No

lawyer would understand from this, in drawing his answer and preparing his evidence, that it was an action to recover the excess of goods wrongfully sold by the sheriff after satisfying the execution. The whole gravamen of the complaint is, that on an execution against Theophilus Jones the sheriff had seized the goods of James T. Jones, and had not returned them. The issue made by the pleadings plainly and simply was, whether the goods were subject to seizure for the debt of T. Jones. Under our system of pleading requiring " a plain and concise statement of the facts constituting a (the) cause of action," no proof can be offered of essential facts not alleged. *Frazer v. Roberts*, 32 Mo. 461; *Kiskaddon v. Jones*, 63 Mo. 190, 192; *Ferguson v. Ferguson*, 2 Comst. (N.Y.) 361; *Kelsey v. Western*, 2 Comst. (N.Y.) 506.

Nor can a plaintiff sue for one cause of action, such as a wrongful levy on the goods of A, under a writ against the goods of B, and recover as for an excessive levy or sale. This rule of pleading has been emphasized by repeated decisions of this court. *Buffington v. A. & P. R. R. Co.*, 64 Mo. 246; *Waldhier v. Hann. & St. Jo. R. R. Co.*, 71 Mo. 514; same case on rehearing, p. 517. Material facts should be distinctly averred and not left to inference; nor can there be any intendment in favor of an issue which the pleader has failed to specify. *Cook v. Putnam Co.*, 70 Mo. 668. Indeed it would have been a little curious, if not embarrassing, for James T. Jones to have virtually conceded his fraud by pretermitting any claim against the sheriff for so much of the goods sold as were necessary to satisfy the execution, and then ask for the excessive sale. It is unnecessary, however, to pass on this question, as it is not before us. The sheriff was answerable for his breach of duty if he did sell more goods than were necessary, and the money in his hands he holds in trust for the party rightfully entitled to it. This disposes of the exception taken by plaintiff to the refusal of the ninth instruction.

The eighth instruction was faulty in that it assumed

The State ex rel. Jones v. Martin.

as a fact, that there was "property after acquired by said James T. Jones, and for which he still owes." **2 FRAUDULENT CONVEYANCES.** The very matter in dispute was, as to whether he or his father acquired this property. True, the evidence, if credited, showed that the goods were bought *pro forma*, in the name of James T. Jones, but this evidence also showed that the father conducted the whole transaction, and received and held the goods, and the merchants never even saw James T. The very matter on trial was to ascertain which one, as between father and son, was the real owner of the goods, the real party in interest. No matter in whose name the purchases were made, if in fact the goods were bought for the father, they were subject to his debts. The plaintiff argues this issue as if the merchants who sold the goods in the name of the son, were actors in this suit. As to them James T. is their debtor. But they are not interpleaders in this action. They have no lien on the goods. And if in fact James' name was used by the father as a screen to hide the after acquired goods from the father's creditors, it was a fraud on his creditors, and these goods, as between them, were subject to the seizure made by the sheriff. Whereas the eighth instruction ignored the question as to the relation the new sustained to the old goods, with which they were mingled, and whether or not their purchase was a part and in furtherance of the original alleged fraudulent scheme, as also, whether they were not, in fact, as between father and son, to be paid for by the father; but on the contrary, it told the jury that notwithstanding the fraudulent combination, the goods afterward acquired in the name of James, and which he owed for as to "other merchants" were exempt from the execution in question. The second instruction, given on behalf of defendant, together with others granted by the court, fairly presented the issues to the jury. If James did lend his name to his father as a cover of fraud, and it results in leaving him liable for the debts incurred to those "other

merchants," he will only have learned by experience what he should have accepted on faith, that " the way of the transgressor is hard."

The judgment of the circuit court is affirmed. MAR-TIN, C., concurs; WINSLOW, C., absent.